We are of opinion that the question of the bona fides of the sale from Giesman to the plaintiff should have been submitted to the jury. The goods were, at the time of the alleged sale, in the store occupied by Giesman, and they were not removed until four days thereafter, nor until the attachment had been issued under which they were subsequently taken by the defendant.
It was a controverted question whether, during this time, the possession had been changed. It was claimed by the plaintiff that, at the time of the sale, he put Meyer, the brother-in-law of Giesman, in possession, as his agent; but the evidence, on the part of the defendant, tended to show that Giesman was in actual possession of the goods up to the time of their removal from the premises. If there was not an immediate delivery to the vendee of the goods sold, followed by an actual and continued change of possession, the sale is presumed to be fraudulent and void as against the creditors of the vendor or subsequent purchasers in good faith; and is conclusive evidence of fraud, unless it is made to appear, on the part of the plaintiff, that the sale was made in good faith and without any intent to defraud such creditors or purchasers. (2 R.S., 136, § 5.) The jury would have been authorized to find, upon the evidence, that there was no immediate delivery, nor any actual and continued change of possession within the statute; and unless the good faith of the parties in making the sale, and the absence of a fraudulent intent was so conclusively established by the evidence that a verdict for the defendant upon that issue would be set aside, the court erred in withdrawing the question from the jury. *Page 11 
It is claimed, on the part of the plaintiff, that he paid a full consideration for the goods, and without notice that Giesman was at the time indebted to other persons. That there was an adequate consideration paid is not decisive evidence that the purchase was made in good faith and without an intent to defraud creditors; and there were circumstances connected with the sale proper to be submitted to the jury, bearing upon the bona fides
of the transaction, independent of the proof relating to the change of possession. Giesman, as the evidence tends to show, was in fact insolvent; and creditors were pressing him for the payment of their debts. The sale to the plaintiff was not made in the usual course of business. He was a butcher, and made the purchase at the solicitation of Meyer, the brother-in-law of Giesman. He was unacquainted with the value of the goods purchased, or with the business carried on by Giesman. It does not appear that there was any negotiation for the purchase prior to the time the bill of sale was drawn, or that the plaintiff took any means to ascertain the value of the property. There was no inventory made showing the value of the specific articles purchased. He agreed, as he states, to pay $1,000, in gross, by canceling a debt against Giesman of $500 for money lent and which was past due; by assuming a note indorsed for Giesman of $240, and paying him $260 in money. The testimony, on the part of the defendant, tended to show that the value of the property did not exceed $500. If the plaintiff paid $1,000 for property of much less value, the fact that he made a bad bargain would not tend to defraud Giesman's creditors, but, upon the question whether the alleged sale was a real or colorable one, it was a material circumstance. Men are presumed to act in their business transactions with reference to their interests. The plaintiff denied any knowledge that Giesman was at the time in failing circumstances; nor did he claim that his motive in taking the property was to secure a doubtful debt.
The evidence was, in many particulars, conflicting, and we do not intend to intimate an opinion upon the merits of the *Page 12 
case, but we think it should have been submitted to the jury.
The judgment should be reversed and a new trial granted.
All concur.
Judgment reversed.