## LELAND SEWELL, Respondent, *v.* THE CITY OF COHOES, Appellant.

*Municipal corporation — Streets — bridges over — accident, caused by.*

For several years prior to August 15, 1874, a tramway extended across a strip of land, which ran parallel to and along the Erie canal in the city of Cohoes, said tramway reaching from a coal yard on the east side of said strip to the canal, which adjoined said strip on the west. The tramway was about ten feet from the ground. The strip of land, which was some fifty feet wide, extended from White street to a bridge over the canal, and was used by vehicles and foot passengers. About eighteen months before that date the strip had been paved and the sidewalk graded by the city. Whether the strip belonged to the State, or was a street of the city, was in dispute.

On that day the plaintiff seated upon the top of a wagon, twenty-one feet long, containing six lions, was driving six horses through White street, and turned to his right along the said strip, intending to cross the bridge. After the horses turned into the strip, the plaintiff looked to the rear to see if the hind wheels of the wagon would clear the corner, and did not look to the front, until he was so near the tramway, which was near the corner, that he could not stop his horses, and was struck by it and injured.

In an action by him to recover damages from the city, *held,* that under all the circumstances of the case, the question as to whether or not the plaintiff was entitled to recover was properly left to the jury, and that a verdict in his favor would not be disturbed.

Upon the trial plaintiff was allowed against the defendant's objection and exception, to show that two days after the accident the common council directed the removal of the tramway and that it was accordingly removed. *Held,* that, although the evidence was inadmissible upon the question of the negligence of the defendant, yet it was competent to show that the defendant assumed authority to control the said strip and remove the tramway after the accident, as tending to show that it had such authority prior thereto.

APPEAL from a judgment in favor of the plaintiff entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages for personal injuries sustained by the plaintiff while driving a wagon through one of the streets of the city of Cohoes. Along the side of the Erie canal, in that city, where it is intersected by White street, there is a strip of land some fifty feet in width, leading to a bridge across the canal, which has for some time been used as a highway. Some fifteen months before the accident the city had paved this strip and established the grade of the sidewalk. The land adjoining this strip upon the east, was used and occupied as a coal yard, and for some time prior to and after the paving of the same, a tramway had extended from this yard to the canal, at a distance of about ten feet above the pavement, being used to run small coal wagons from the yard to the canal. The bridge was situated a short distance north of White street. There was a house, a story and a-half high, standing on the corner of the turn, and between this and the tramway was a high fence, surmounted by a stone wall several feet high. The plaintiff was seated upon the top of a wagon, some twenty-one feet in length, in which were contained six lions, and was driving six horses. He drove through White street, and turned along the canal towards the bridge, which he intended to cross. He was unacquainted with the city and did not know that the bridge was there. After the leading horses turned the corner he did not look towards the bridge, but turned towards the rear to see if the hind part of the wagon would clear the corner; just as the second team passed under the bridge he saw it, and tried to stop the horses, but before he could do so he was struck by the bridge and injured.

Among other requests to charge, on the part of the defendant, were the following:

"Second. That the defendant was not bound to provide a passageway in the street for a vehicle of the unusual size and length of that driven by the plaintiff, and they were guilty of no legal negligence in permitting a bridge across the street only high enough to allow the usual and ordinary traffic, and the passage of vehicles of ordinary and usual size.

"Fourth. That if the vehicles were so long that, while turning the corner, it was necessary that an eye should be kept backward on the rear wheel of the wagon, then ordinary care required that some lookout should at the same time be kept ahead.

" Fifth. That plaintiff, having kept his eye turned back to the wheel until he was almost directly under the bridge, as he admits, he was guilty of negligence which will prevent a recovery.

" Sixth. That the tramway, having been constructed and used by private parties, from the canal to the coal yard, before the defendant had paved or in any way adopted the ground under it as a street, they did not, by paving underneath it, or adopting the passage under it as a street, incur the obligation of removing or compelling the removal of the bridge, especially if ordinary vehicles could pass under it without difficulty or danger."

All of which requests were refused by the court.

The jury found a verdict in favor of the plaintiff.

*Samuel Hand*, for the appellant.

*J. H. Clute*, for the respondent.

Boardman, J.:

There are many points of resemblance between this case and *Blanchard* v. *Western Union Telegraph Company*, decided by the Court of Appeals on appeal from this department. The latter was an action for so negligently laying the company's cable across the Hudson river at Albany that plaintiff's steamboat caught upon it, and the scag and propeller were stripped off, and the boat damaged. It appeared that no other vessel, of the many passing over this submerged cable, had ever caught upon it, and that the vessel injured had repeatedly caught upon the cable without serious injury, and that the indications were that the scag on the bottom of plaintiff's boat operated as a hook by reason of its defective attachment to the bottom. It was argued (1) that the plaintiff was guilty of contributory negligence in paying no attention to the condition of the bottom of his own boat after repeated warnings that something was wrong; (2) and that the defendant was guilty of no negligence, nor did it obstruct navigation when it so located its cable that all vessels except this one passed over it without trouble, many of such vessels having a greater draft of water than plaintiff's. But the Court of Appeals sustained a judgment rendered for the plaintiff by a referee, holding that the questions of negligence and contribu-

tory negligence were upon the evidence questions of fact and not of law, and that the findings of the referee were conclusive upon courts of review in those respects. There is, I think, in the case now under consideration greater evidence of negligence on the part of defendant, and less evidence of contributory negligence by plaintiff, than in the case referred to. As a consequence, the motion for a nonsuit was properly denied. It is not quite clear that the bridge or tramway passed over lands adjoining the canals belonging to the State. The evidence of Greene with the map tends to establish that fact, but such purpose was disclaimed in connection with its admission. Notwithstanding the allegations of the pleadings, I think enough appears to raise a presumption that the property belonged to the State. However that may be, the defendant had, prior to the disaster, taken possession of this land and graded it for a street, and in effect invited its use for such purposes. In such a case I think the defendant was bound to exercise the same degree of care as if it owned the right of way for the purpose of a street.

The nature of the obstruction and the character of the team and vehicle under plaintiff's charge were proper subjects for consideration by the court and jury. The learned judge submitted such matters fairly to the jury, and properly left it for the jury to say whether a cause of action was established by the negligence of the defendant and the absence of negligence by the plaintiff. He was not called on to decide as a legal proposition whether this vehicle was of such unusual size and length as not to be entitled to passage along the street, as requested in defendant's second proposition. That was a question of fact, not of law, and it was proper to decline the whole proposition of which that was part. The fourth and fifth requests to charge were properly disposed of. The fifth request, if assented to, would have made the plaintiff's negligence due to a single fact, whereas no one fact alone can settle such a question. Negligence must depend upon all the circumstances surrounding the transaction. The fourth request had been covered, so far as it was good law, by the charge already made. So, too, of the sixth request to charge. So far as it was correct, it had been charged. Whether the defendant incurred the obligation to remove the bridge after adopting the ground under it as a street,

even though ordinary vehicles could pass under it without danger, was a question of common prudence. Was it safe and prudent for the defendant to prepare a street and invite travel through it and under this bridge in the condition in which it was? That was not for the court to determine. If it was, where is the limit at which it ceased to be a legal question? Does the law say how high a bridge shall be above the highway to exempt from liability?

Several exceptions were taken to rulings made in the admission or exclusion of evidence.

It will only be necessary to consider one of them. The injury complained of occurred August 15, 1874. Afterwards and on the seventeenth of August the common council passed a resolution directing the removal of this tramway or bridge, and it was removed. The plaintiff offered this resolution and removal in evidence. It was objected to by defendant " as not admissible, being after the time of the accident. The court thought it might bear upon the question whether the common council had control of the street, and allowed the question." The defendant excepted to such ruling.

In *Dougan* v. *Champlain Transportation Company* (56 N. Y., 8), such evidence was held to be improper upon the issue of negligence. Unless another and proper purpose can be shown for the admission of such evidence in this case, it was error and a new trial would follow. It was not admitted by the learned judge as evidence of negligence, but as tending to show that the defendant assumed authority to control the street and cause the obstruction to be removed. Such exercise of control, even after the injury, is some evidence of power and authority before the accident, the facts being the same. The defendant endeavored to exempt itself from liability by showing it had no title to the street over which the bridge passed, and that as a consequence it had no right to cause the removal of the bridge built by others. Hence it asked, as an inference, that the city should not be held negligent in a matter which it could not prevent. Was it not proper to repel such inference by showing the exercise of the necessary power with success after the accident? Does not that tend to show the existence of the power before the act? Does it not tend to show the existence of a power and authority over this street and bridge, creating a responsibility for

neglect of duty in respect thereto? These questions should, I think, be answered in the affirmative, and for such purpose the evidence was admitted. The propriety of this ruling is sustained by *Mauderschid* v. *City of Dubuque* (4 Amer. R., 196, 204; 29 Iowa, 73), in which is cited *Folsom* v. *Underhill* (36 Vermont, 580), as an authority for the same view.

I conclude, therefore, that we are not controlled by *Dougan* v. *Champlain Transportation Company* (*ante*), and that the distinction between the two cases which I have made is justified by the facts in the case.

It is not considered necessary to discuss the other exception taken respecting evidence. They are not believed to be well taken.

We conclude, therefore, (1) that the negligence of the respective parties under the evidence was not a question to be decided by the court, and was properly left to the jury; (2) that the charge of the court was eminently fair and plain, and the judge did not err in so far as he refused to charge as requested by the defendant's counsel; (3) that there was no fatal error in the rulings upon the admission or rejection of evidence; and (4) that as a consequence no error was committed in refusing a motion by the defendant for a new trial made upon the minutes.

The judgment and order should therefore be affirmed, with costs.

LEARNED, P. J., concurred; BOCKES, J., dissented.

Judgment and order affirmed, with costs.